# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 8685 | DATE | December 30, 2004 |
| CASE TITLE | Dull v. American Signature, Inc. d/b/a Value City Furniture | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant Value City's motion for summary judgment is granted, terminating this case. All previously set dates are vacated. Any pending motions are moot.

(11) ☒ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JAN 0 3 2005 | |
| | Notified counsel by telephone. | | date docketed | |
| ☒ | Docketing to mail notices. | | rbf | |
| ☒ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | | date mailed notice | |
| | Date/time received in central Clerk's Office | | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAWRENCE DULL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 03 C 8685 |
| v. ) | |
| ) | |
| AMERICAN SIGNATURE, INC. d/b/a ) | **DOCKETED** |
| VALUE CITY FURNITURE ) | |
| ) | JAN 0 3 2005 |
| Defendant. ) | |



## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On or about August 12, 2003, plaintiff Lawrence Dull ("Dull") commenced this action by filing a complaint in the Circuit Court of Cook County, Illinois against defendant American Signature, Inc. d/b/a as Value City Furniture ("Value City"). The complaint alleged that Value City terminated Dull's employment with Value City in retaliation for Dull's intent to file a claim under the Illinois Workers' Compensation Act, 820 ILCS 305/1. The complaint also alleged that Value City was a foreign corporation licensed to do business in the State of Illinois.

On December 2, 2003, Value City removed the case to this court alleging diversity of citizenship. Value City is an Ohio corporation with its principal place of business in Ohio. (Dkt. No. 1 ¶ 8.) Dull is an Illinois citizen. (Id. ¶ 9.) Dull admitted that he is seeking damages in this case in excess of $75,000. (Id. ¶ 8, Ex.I ¶ 1.) This court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1).

Value City filed the present motion for summary judgment on October 15, 2004 as required

1



by the scheduling order this court entered on January 15, 2004 ("scheduling order"). Dull failed to file his response by November 5, 2004 as required by the scheduling order. On November 17, 2004, this court entered a minute order that extended Dull's time in which to file a response. Dull filed his response on November 30, 2004 and Value City filed a reply on December 14, 2004. For the following reasons, the motion for summary judgment is granted.

## BACKGROUND

Dull began working for Value City in March of 1997. (Pl.'s 56.1(b)(3)(A) Resp. ¶ 7.) On his employment application, Dull informed Value City that he had injured his left knee while in the United States Army and ended his service in 1990 as a result of the knee injury. (Id. ¶ 26.) Dull had surgery on his left knee before he was hired at Value City. (Id. ¶ 27.) Dull's first injury at Value City occurred in May of 1999, when he twisted his left knee. (Id. ¶ 28.) As a result of that injury, Dull filed a workers' compensation claim, had surgeries in September and December of 1999, and missed work one week in October, all of November, and most of December. (Id. ¶ 30.) No adverse action was taken against Dull because of his knee injury, surgeries or extensive time off, except that Value City did not honor all of the restrictions placed on Dull by his doctor as a result of those injuries. (Id. ¶¶ 28, 30.)[1] In January of 2001, Dull again had surgery on his left knee and took of work. (Id. ¶ 32.) After his termination in May of 2001, which gave rise to this cause of action, Dull filed a workers' compensation claim against Value City and received benefits from July 12, 2001

---

[1] There is no evidence in the record as to which restrictions were not honored or why. Dull denies ¶ 30 of Value City's 56.1(a)(3) Statement which alleges that no adverse job action was taken as a result of Dull's injuries in 1999 by citing to his deposition testimony which simply states that Value City did not honor all of the work restrictions placed on him by his doctor as a result of those injuries in 1999. (Pl.'s 56.1(b)(3)(A) Resp. ¶ 7.) As explained in more detail below, Dull did not submit a Statement of Additional Facts as required by Local Rule 56.1(b)(3)(B).

2

through October 23, 2002. (Id. ¶ 33.)

Part of Dull's responsibilities at Value City involved training other employees about Value City's employee policies and enforcing those policies. (Id. ¶ 12.) The "Rules and Regulations" section of Value City's Associate Handbook contains the following statement: "As a Value City Furniture associate you are expected to comply with the rules and regulations; failure to do so may result in a reprimand or the more drastic penalty of termination." (Id. ¶ 13.) This rule applied to Dull. (Id.) Value City has an Associate Discount Policy. (Id. ¶¶ 14-16.) Punishment for violating the Associate Discount Policy includes termination. (Id. ¶ 14.) Under the Associate Discount Policy, employees may purchase Value City merchandise at a 30% discount. (Id. ¶ 15.) Value City employees, like customers, are not allowed to take merchandise out of the store without paying for it first. (Id. ¶ 17.)

On May 13, 2001, Dull's store manager, Dave Holman ("Manager Holman"), was away from the store on vacation. (Id. ¶ 34.) On that day, May 13, 2001, Dull purchased a rectangle oak curio cabinet ("curio cabinet") from his Value City branch store. (Id. ¶ 35.) The curio cabinet had a retail price of $229, but Dull sold it to himself for $20. (Id.) Dull prepared the invoice for the curio cabinet himself, and signed off on the invoice himself. (Id. ¶ 36.) By purchasing the curio cabinet for $20, Dull purchased it at a 91% discount. (Id. ¶ 38.) Dull paid only one penny for the curio cabinet on May 13, 2001, the date of purchase. (Id. ¶ 42.) Dull took the curio cabinet out of the store on May 13, 2001 without paying for it, and did not pay the balance of the purchase price of $20 that he discounted until May 17, 2001. (Id. ¶ 43.) Dull "does not dispute that he violated Value City's written Associate Discount Policy when he purchased the curio" cabinet. (Pl.'s Resp. Brief at 4.)

3

On May 13, 2001, Steve Dickerson ("Dickerson"), Logistics Manager for Value City, observed Dull's car with a curio cabinet sticking out of the trunk. (Id. ¶ 44.) On May 13, 2001, Dickerson began investigating Dull's purchase of the curio cabinet. (Id.) On May 14, 2001, Dickerson discovered that Dull had paid only one cent for the curio cabinet. (Id. ¶ 45.) On May 17, 2001, Dickerson discovered that Dull paid the balance of the price on the discounted curio cabinet. (Id.) On May 21, 2001, Dickerson reported the investigation to Manager Holman, who had returned from vacation. (Id. ¶ 48.) Holman contacted Value City's Loss Prevention Department, and that department initiated an investigation into Dull's purchase of the curio cabinet. (Id. ¶ 53.) On May 30, 2001, Holman and Tony Rohr, a Loss Prevention Specialist for Value City, met with Dull and terminated his employment. (Id.) The reason for the termination was Dull's violation of the Associate Discount Policy. (Id. ¶ 54.)

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." All evidence must be viewed in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, inferences in favor of the nonmoving party must be legitimate and justifiable. Id. The court's function is not to weigh evidence or make credibility determinations, but to determine whether there is an issue for trial. Id. A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

4

# SUMMARY JUDGMENT PROCEDURE
# IN THE NORTHERN DISTRICT OF ILLINOIS

The Seventh Circuit has "consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment." Metropolitan Life Ins. Co. v. Johnson, 297 F.3d 558, 562 (7th Cir. 2002). Local Rule 56.1 governs summary judgment procedure in this district. That rule requires a party moving for summary judgment to submit a statement of material facts ("56.1(a)(3) Statement") consisting of short numbered paragraphs with citations to evidence in the record supporting each numbered statement. N.D. Ill. L.R. 56.1(a)(3). The nonmoving party must file a similar statement in response ("56.1(b)(3)(A) Response") to the moving party's 56.1(a)(3) Statement. N.D. Ill. L.R. 56.1(b)(3)(A). That 56.1(b)(3)(A) Response must contain a response to each numbered paragraph of the 56.1(a)(3) Statement, and, in the case of any disagreement, specific citations to evidence in the record supporting the disagreement. N.D. Ill. L.R. 56.1(b)(3)(A). Filing a proper 56.1(b)(3)(A) Response is crucial, because "the penalty for failing to properly respond to a [56.1(a)(3) Statement] is usually summary judgment for the movant ... because the movant's factual allegations are deemed admitted." Malec v. Sanford, 191 F.R.D. 581, 582-87 (N.D. Ill. 2000) (Castillo, J.) (providing a comprehensive overview of summary judgment procedure in the Northern District of Illinois).

After responding to the movant's 56.1(a)(3) Statement, a nonmoving party is also allowed to provide the court with additional facts that require denial of summary judgment. N.D. Ill. L.R. 56.1(b)(3)(B). Those additional facts from the nonmoving party must be provided in the form of a statement of additional facts that, just like the movant's 56.1(a)(3) Statement, must be in short numbered paragraphs and supported by specific citations to the record ("56.1(b)(3)(B) Statement of

Additional Facts"). That 56.1(b)(3)(B) Statement of Additional Facts is "the only acceptable means of . . . presenting additional facts to the district court." Midwest Imports, Ltd. v. Coval, 71 F.3d 1311, 1317 (7th Cir. 1995) (emphasis added). "Simply providing additional facts in one's responsive memorandum is insufficient to put those facts before the Court." Malec, 191 F.R.D. at 584 (citing Midwest Imports, Ltd., 71 F.3d at 1317).

## ANALYSIS

Under Illinois law, a valid claim for retaliatory discharge in the context of a workers' compensation claim requires a plaintiff to show "(1) that he was the defendant's employee before his injury; (2) that he exercised a right granted by the Workers' Compensation Act; (3) and that he was discharged from his employment with a causal connection to his filing a workers' compensation claim." Carter v. Tennant Co., 383 F.3d 673, 677 (7th Cir. 2004) (quoting Hiatt v. Rockwell Int'l Corp., 26 F.3d 761, 767 (7th Cir. 1994)). "The element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee." Id. (quoting Hartlein v. Ill. Power Co., 151 Ill.2d 142, 176 Ill. Dec. 22, 601 N.E.2d 720, 728 (1992)).

In Carter, the Seventh Circuit observed that there is some uncertainty as to whether the above framework is procedural or substantive, and, therefore, whether the above framework, which is based on Illinois law, should be utilized when a retaliatory discharge case "wander[s] into federal court by virtue of . . . diversity jurisdiction." Carter, 383 F.3d at 678 (quoting McEwen v. Delta Air Lines, Inc., 919 F.2d 58, 59-60 (7th Cir. 1990)). "The alternative would be the burden shifting method presented in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed. 2d 668 (1973)." Id. The Seventh Circuit did not resolve that uncertainty in Carter, because the parties had not briefed the issue, and, because under either the Illinois standard or the McDonnell Douglas

standard, the plaintiff in a retaliatory discharge case loses if the defendant "can provide a valid, non-pretextual reason for its decision to terminate" the plaintiff. Id. The court in Carter found a valid, non-pretextual reason for the defendant's decision to terminate the plaintiff, and, therefore, did not consider which standard should apply when evaluating Illinois retaliatory discharge claims. Id.

This case is similar. Neither Dull nor Value City has addressed the legal uncertainty as to whether the Illinois standard or the McDonnell Douglas standard should control. Moreover, the main dispute between Dull and Value City is whether the stated reason for Dull's termination is pretextual. As explained below, this court finds that viewing the evidence in the light most favorable to Dull, Value City has established a valid non-pretextual reason for Dull's termination. Accordingly, this court will do as the Seventh Circuit did in Carter, and not consider which standard, federal or Illinois, applies to Illinois retaliatory discharge cases.

Value City's stated reason for terminating Dull's employment is that Dull purchased the curio cabinet at a 91% discount in violation of the Associate Discount Policy on May 13, 2001. Punishment for violating the Associate Discount Policy includes termination. (Pl.'s 56.1(b)(3)(A) Resp. ¶ 14.) Dull violated the Associate Discount Policy on May 13, 2001 in at least two respects: (1) he took a 91% discount on the curio cabinet (Id. ¶ 38), a discount far exceeding the allowed 30% (Id. ¶ 15); and (2) he did not even pay the full discounted price on the day he took the curio cabinet out of the store and instead paid only one penny (Id. ¶ 42). Dull "does not dispute that he violated Value City's written Associate Discount Policy when he purchased the curio" cabinet" (Pl.'s Resp. Brief at 4), and provides no evidence disputing the fact that he violated the written Associate Discount Policy.

Dull does not dispute that a violation of the Associate Discount Policy provides a valid

7

reason for his termination, and does not dispute that he violated the written Associate Discount Policy. Nonetheless, Dull argues that his discharge was impermissible because Value City's proffered explanation for his termination was pretextual. Dull has two arguments in support of this position. First, Dull argues that Value City selectively enforced its Associate Discount Policy against him on May 30, 2001 only after Dull informed Manager Holman on May 29, 2001, that due to Dull's continuing physical problems from his work injury Dull had retained an attorney to file a workers' compensation claim. (Pl.'s Resp. Brief at 3-4.) Second, Dull supports his argument that Value City Selectively enforced its Associate Discount Policy by arguing that "prior to May of 2001 [Dull] had purchase numerous items for himself . . . below what Value City's Associate Discount Policy provided with the knowledge of Value City management" without any warning, reprimand or threat of termination. (Pl.'s Resp. Brief at 4.) In essence, Dull's argument is that prior to terminating him on May 30, 2001, Value City did not enforce its Associate Discount Policy as written, but informally allowed Dull to take discounts on furniture in excess of 30%, and that Value City only enforced its Associate Discount Policy against Dull on May 30, 2001 after being informed on May 29, 2001 of Dull's intent to hire a lawyer and file a workers' compensation claim.

There is no evidence properly before this court supporting Dull's contention that Value City selectively enforced its Associate Discount Policy against Dull, because Dull has failed to comply with Local Rule 56.1(b)(3)(B). Dull did not provide this court with a 56.1(b)(3)(B) Statement of Additional Facts, which is the only "acceptable means of . . . presenting additional facts to the district court." Midwest Imports, Ltd., 71 F.3d at 1317. Instead, Dull simply set forth his additional facts in his brief. When faced with a similar situation in Midwest Imports, Ltd., the Seventh Circuit affirmed Judge Zagel's exercise of his discretion in refusing to consider the nonmovant's additional

8

facts when those additional facts were not set forth in a 56.1(b)(3)(B)[2] Statement as required by the local rules, but were instead simply set forth in the nonmovant's brief.[3] Id. In making that ruling, the Seventh Circuit found "it insignificant that the rule does not explicitly set forth the consequences of failing to provide a statement of additional facts, as it does for failing to controvert the opposing party's" 56.1(a)(3) Statement. Id. The Seventh Circuit based that ruling on the need to "maintain and enhance the efficient flow of the district court's docket." Id. Compliance with Local Rule 56.1(b)(3)(B) not only enhances efficiency, but also provides a clear opportunity for the movant to controvert the facts relied upon by the nonmovant to oppose summary judgment. By failing to provide a 56.1(b)(3)(B) Statement of Additional Facts, Dull unfairly handicapped Value City's ability to controvert Dull's additional facts.

As the Seventh Circuit stated, "it is not the parties prerogative to determine when a rule can be satisfied by other than what the rule requires." Id. at 1318. Therefore, Dull "must suffer the consequences, harsh or not, of [his] default." Id. The consequence of Dull's failure to comply with Local Rule 56.1(b)(3)(B) is that this court will not consider any of the additional facts raised in his brief. Accordingly, there is no evidence in the record as to whether Value City was informed of

---

[2] The court in Midwest Imports, Ltd. considered the effect of a nonmoving party's failure to provide a statement of additional facts as required by then Local Rule 12(N)(3)(b). Local Rule 12(N) was later reclassified as Local Rule 56.1(b). See O'Reagan v. Arbitration Forums, Inc., 246 F.3d 975, 987 n.6 (7th Cir. 2001). The language of then Local Rule 12(N)(3) examined by the court in Midwest Imports, Ltd., and the language of current Local Rule 56.1(b)(3) are identical. Midwest Imports, Ltd., 71 F.3d 1313 n.1 (quoting the language of then Local Rule 12(M) and 12(N)).

[3] The Seventh Circuit affirmed Judge Zagel's decision not to consider the facts set out in the nonmovant's brief event though those facts "were adequately referenced and supported in its brief." Midwest Imports, Ltd., 71 F.3d at 1316. As explained below, Dull not only has failed to support his alleged facts in a 56.1(b)(3)(B) Statement of Additional facts, but he also fails to provide adequate support for a crucial fact alleged in his brief.

9

Dull's intent to file a workers' compensation claim, and there is no evidence as to whether Value City had knowledge, prior to May 13, 2001, of Dull's violations of the Associate Discount Policy. Without any evidence to support his theory that Value City's reason for terminating his employment was pretextual, Dull offers this court nothing but bare speculation, which is insufficient to create a material issue of fact. Payne v. Pauley, 337 F.3d 767, 772 (7th Cir. 2002).

Even if this court were to consider the facts set forth in Dull's brief, Value City would still be entitled to summary judgment. The heart of Dull's claim, as stated in his brief, is that he "contends that on May 29, 2001 he advised Dave Holman that he had retained a lawyer" to file a workers' compensation claim, and that Value City terminated him the next day. (Pl.'s Resp. Brief at 3-4.) A contention, however, is not sufficient to oppose summary judgment. There is no evidence in the record, even considering the facts raised in Dull's brief, for the alleged fact that Holman was notified on May 29, 2001 that Dull intended to file a workers' compensation claim. In support of that contention made on pages 3 through 4 of his brief, Dull cites the following: (1) his complaint and (2) pages 35 and 36 of his own testimony at an arbitration hearing, which are attached as Exhibit 1 to his 56.1(b)(3)(A) Response (Dkt. No. 27). (Pl.'s Resp. Brief at 4.) Dull's allegations in his complaint clearly do not create a material issue of fact. Celotex Corp. 477 U.S. at 324. As for Dull's testimony, it simply establishes that Dull informed Holman of his intent to hire a lawyer and file a workers' compensation claim "on May 30 of 2001 or around that time" (Pl.'s 56.1(b)(3)(A) Resp., Dkt. No. 27, Ex. 1, p. 36.) Thus, there is no evidence in the record creating a material issue of fact that May 30, 2001, the day Dull was fired, was the day after he notified Value City of his intent to file a workers' compensation claim. Moreover, none of the other evidence Dull raises in his brief creates an issue as to the established material fact that Dull on May 13, 2001 violated Value City's written Associate Discount Policy and that the written Associate Discount Policy was the policy of

10

Value City. Dull's violation of Value City's policy provided a valid basis for the termination of his employment at Value City on May 30, 2001. Therefore, summary judgment will be granted in favor of Value City on Dull's claim.

## CONCLUSION

For the foregoing reasons, Value City's motion for summary judgment is granted, terminating this case. Any pending motions are moot.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
United States District Judge

DATE: December 30, 2004.

11